UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JACQUELYN A. VANDEHEY,
on her own behalf and on behalf
of all others similarly situated,

        Plaintiff,

v.                                               Case No. 18-C-1669

CLIENT SERVICES, INC.,
a Missouri Corporation, and
JOHN DOES,

        Defendants.

## DECISION AND ORDER GRANTING MOTION FOR CLASS CERTIFICATION

Plaintiff Jacquelyn A. Vandehey alleges Defendant Client Services, Inc. violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*, by sending Plaintiff a debt collection letter that was materially false, deceptive, and misleading to an unsophisticated consumer. Plaintiff filed a motion for class certification on April 12, 2019. Plaintiff proposes to represent a class consisting of "[a]ll natural persons to whom Defendant mailed a written communication in the form of *Exhibit A* to an address in the State of Wisconsin on a charged-off Capital One credit card account during the Class Period which begins on October 19, 2017 and ends on November 9, 2018." Pl.'s Br., Dkt. No. 16, at 1. For the following reasons, Plaintiff's motion for class certification will be granted.

### BACKGROUND

Plaintiff's allegations stem from a letter she received from Defendant dated October 30, 2017. Compl. ¶ 25, Dkt. No. 1. Plaintiff alleges that this letter was a "form letter" and that it was

sent to collect debts from Wisconsin residents. Pl.'s Br., Dkt. No. 16, at 2. The letter indicates that Plaintiff defaulted on a debt owed to Capital One Bank, and that, at some point, that debt was transferred to Defendant for collection. Compl. ¶¶ 27, 31. The letter provided the following itemized charges:

> Balance Due at Charge-Off: $978.76
>
> Interest: $0.00
>
> Other Charges: $0.00
>
> Payments Made: $0.00
>
> Current Balance: $978.76

*Id.* ¶ 33; Dkt. No. 1-1 at 2. On the second page of the letter, Defendant provided, "Please note that no interest will be added to your account balance through the course of Client Services, Inc. collection efforts concerning your account." Compl. ¶ 35; Dkt. No. 1-1 at 3.

Plaintiff alleges that, as a result of the itemized charges, the balance being described as "current," and the statement on the second page of the letter, Defendant has falsely implied to the unsophisticated consumer that interest and other charges could be added to the charged-off debt. Compl. ¶ 42. Plaintiff claims, therefore, that the letter is materially false, deceptive, and misleading to an unsophisticated consumer. *Id.* ¶ 44. Plaintiff further claims that the letter created a false sense of urgency because the letter misled unsophisticated consumers into thinking that they needed to promptly pay the debt, or face a substantial increase in the amount owed. Pl.'s Br., Dkt. No. 16, at 3. As a result of these alleged violations, Plaintiff seeks statutory damages for herself and the proposed class; a reward to Plaintiff for services on behalf of the class; attorneys' fees, litigation expenses, and costs pursuant to 15 U.S.C. § 1692k(a)(3); and other relief that may be deemed just and proper.

## ANALYSIS

**A. Rule 23 Class Certification Standard**

A plaintiff requesting class certification must satisfy the four prerequisites of Rule 23(a) as well as one of the provisions listed in Rule 23(b). *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 23(a) requires that a plaintiff establish that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). It is the plaintiff's burden to prove that class certification is warranted. *Oshana*, 472 F.3d at 513. Rule 23 is not a "mere pleading standard," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), and a plaintiff must prove each disputed requirement by a preponderance of the evidence. *Messner v. Northshore Univ. Health Sys.*, 669 F.3d 802, 811 (7th Cir. 2012) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)).

**B. Rule 23(a) Analysis**

The four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequate representation—have all been satisfied in this case. Under Rule 23(a)(1), the numerosity requirement, the class must be "so numerous that joinder of all members is impracticable." The class size in this case, 6,814 members, is sufficient to satisfy the numerosity requirement. *See Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006) (recognizing that classes consisting of as few as forty members could satisfy numerosity).

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." This requirement is satisfied when a common issue of law or fact is "capable of classwide

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. In other words, a plaintiff must show that the class members "suffered the same injury." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (citation omitted). "A common nucleus of operative fact" is usually enough to satisfy Rule 23(a)(2), and these common nuclei are typically found where "the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (citations omitted). In this case, Plaintiff alleges that Defendant mailed standardized "form letters" to members of the purported class which were materially false, deceptive, and misleading in violation of the FDCPA. Compl. ¶¶ 44, 49. Thus, a common question of fact arises as to whether each member of the purported class was mailed a standardized letter, and a common question of law arises as to whether the letters were materially false, deceptive, and misleading. Therefore, Rule 23(a)(2)'s commonality requirement has been satisfied.

Rule 23(a)(3)'s typicality requirement necessitates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The rule "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims or other class members and his or her claims are based on the same legal theory." *Id.* (citation omitted). In this case, Plaintiff's allegation that Defendant mailed the same standardized "form letter" to each member of the purported class gives rise to each member's claim that Defendant violated the FDCPA. Therefore, the typicality requirement has been satisfied.

4

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This prerequisite is directed at "concerns about the competency of class counsel and conflicts of interest" between the class and its representatives. *Dukes*, 564 U.S. at 349 n.5. In assessing adequacy of representation, the court must consider whether the named plaintiff "(1) has antagonistic or conflicting claims with other members of the class; (2) has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007). The burden of establishing this standard is "not difficult." *Murray v. New Cingular Wireless Serv., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005). Plaintiff in this case shares the same injury with all other members of the purported class, and thus, there is no reason to believe that Plaintiff has antagonistic or conflicting claims with other members of the class. Additionally, Plaintiff has retained experienced counsel on the matter, who have the resources to vigorously conduct the litigation. *See* Thomasson Decl. ¶¶ 2–7, Dkt. No. 17. Thus, the adequacy requirement of Rule 24(a)(4) is satisfied.

**C. Rule 23(b) Analysis**

Having satisfied the four requirements of Rule 23(a) by a preponderance of the evidence, Plaintiff must satisfy at least one of Rule 23(b)'s provisions. In this case, Plaintiff relies on Rule 23(b)(3), which requires that the court find that "the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The rule instructs the court that the "matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

5

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

"[A] common question predominates over individual claims if 'a failure of proof on the common question would end the case' and the whole class 'will prevail or fail in unison.'" *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015) (quoting *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013)). The issue here—whether Defendant violated the FDCPA by sending form letters that were materially false, deceptive, and misleading to the purported class—predominates over any individual questions of the purported class members. Thus, Plaintiff has met her burden of establishing predominance under Rule 23(b)(3).

Defendant saves its only arguments for the superiority component of Rule 23(b)(3). Defendant contends that a class action is not the superior method of litigating the issues presented here because recovery for individual class members would be, at most, de minimis. A plaintiff bringing an FDCPA case individually can recover statutory damages of $1,000, whereas a class member can only recover his proportionate share of "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B). Based on Defendant's responses to Plaintiff's Requests to Admit, Defendant denies having a net worth in excess of $100,000 and, thus, the maximum amount of class damages could not exceed $1,000. *See* Def.'s Br., Dkt. No. 18, at 3 (citing Dkt. No. 17-1 at 5–6). As a result, if each of the estimated 6,814 class members makes a claim, he or she would receive approximately 15¢ in damages. Defendant argues that its small net worth, combined with the purported class size, renders a class action inferior to individual litigation.

The Seventh Circuit has indicated in dicta that "a de minimis recovery (in monetary terms) should not automatically bar a class action." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). This is because "[t]he policy at the very core of the class action mechanism is to

6

overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* The court recognized that the FDCPA addresses this problem by authorizing awards of statutory damages of up to $1,000 and recovery of actual attorneys' fees. But this assumes "the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing and able to find an attorney willing to take her case." *Id.* The court emphasized that "[t]hese are considerations that cannot be dismissed lightly in assessing whether a class action or a series of individual lawsuits would be more appropriate for pursuing the FDCPA's objectives." *Id.*

But *Mace* did not say that the likelihood of only a de minimis recovery for class members is never a proper consideration in deciding whether to certify an FDCPA class under Rule 23; it said that "a de minimis recovery (in monetary terms) should not automatically bar a class action." *Id.* at 344. Moreover, even this statement was dicta, since the court explicitly noted that, given its holding that a nation-wide class was not required, "the district court's concerns about a de mininis recovery are currently moot." *Id.* Other courts, on the other hand, have found that a class action is not the superior method to adjudicate an FDCPA claim when it would result in de minimis recovery. *See Gallego v. Northland Grp., Inc.*, 102 F. Supp. 3d 506, 510–11 (S.D.N.Y. 2015), *rev'd on other grounds*, 814 F.3d 123 (2d Cir. 2016); *Jones v. CBE Grp., Inc.*, 215 F.R.D. 558, 570 (D. Minn. 2003); *Gradisher v. Check Enforcement Unit, Inc.*, 209 F.R.D. 392, 394 (W.D. Mich. 2002).

This court also recently denied class certification based on a lack of superiority in *Boucher v. Financial System of Green Bay, Inc.*, Case No. 17-C-132, 2019 WL 1543988 (E.D. Wis. Apr. 8, 2019). There, the plaintiffs alleged they received a debt collection letter that was false, deceptive, and misleading in violation of the FDCPA. The court originally dismissed the action, reasoning that the letter met the "safe-harbor" rule. The Seventh Circuit reversed, holding that the statement

7

at issue was materially false and misleading because the defendant admitted that late charges and other charges could not be legally or contractually added to the plaintiffs' debts. *See Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362 (7th Cir. 2018). On remand, the plaintiffs filed an amended complaint and a motion for class certification. The defendant opposed the motion for class certification, arguing that class treatment was not superior to individual treatment. Given that liability had already been established as a matter of law and in light of the defendant's net worth, the court found that a class action would not be the superior method under which to resolve the individual class members' disputes. It explained that, because each class member would only recover $1.00 and would recover more by opting out of the class, there was virtually no incentive for anyone to remain a member of the class. That, along with the expense of mailing notices, the costs of administration, and the additional attorneys' fees that would be incurred, the court concluded class treatment was not a superior method for adjudicating the plaintiffs' claims. *Boucher*, 2019 WL 1543988, at *6.

Even when liability is uncertain, it would seem reasonable to deny class certification when the award for individual members of the class is likely to be at most a de minimis recovery of less than the cost of a postage stamp. As the district court noted in *Gallego*, "[s]uch an insignificant recovery is harmful to a putative plaintiff who might have prosecuted his claim individually but failed to opt out of the class, and it is meaningless to everyone else." 102 F. Supp. 3d at 510. The potential claimant who failed to opt out can recover only pennies, instead of seeking up to $1,000 in statutory damages, and most of those remaining are unlikely to bother taking the steps required to obtain the few pennies to which their claim entitles them. As the *Gallego* court also noted, class actions can generally be useful for vindicating claims with small individual recoveries by creating an incentive for attorneys to litigate them. But this incentive already exists in FDCPA cases, the

8

court noted, since the FDCPA requires the defendant to pay the prevailing plaintiff's attorneys fees. *Id.*

True, class certification reduces the possibility that the defendant will face multiple lawsuits raising the same issue. But where as here the violation is at most a technical one that does not result in actual damages to the recipient of the challenged collection letter, the possibility of multiple lawsuits is slim. Presumably, this is why Defendant opposes Plaintiff's motion for class certification. Class certification under these circumstances is likely to benefit only the attorneys whose fees would be expected to increase substantially if a suit on behalf of one person is transformed into a class action on behalf of 6,814. It is not the purpose of the FDCPA, however, to benefit attorneys. "The prospect of mass indifference, a few profiteers, and a quick fee to clever lawyers is hardly the intended outcome for Rule 23 class actions." *Id.*

But in this case, unlike *Boucher*, Defendant has introduced no evidence as to its net worth. Citing *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105 (9th Cir. 2018), Defendant argues that, because Plaintiff has failed to introduce evidence of Defendant's net worth, Plaintiff has failed to show that a class action is superior. But *Tourgeman* did not hold that a plaintiff must carry the burden of introducing net worth at the class certification phase; rather, it held that a plaintiff must carry the burden at trial. *Id.* at 1108 ("In light of the statutory text and structure, we conclude that Congress intended the plaintiff to carry the burden at trial of introducing evidence of the defendant's net worth."). More importantly, *Tourgeman* was decided by the Ninth Circuit, and it is not clear that the Seventh Circuit would agree.

In *Carter v. United States*, for example, the Seventh Circuit addressed the question whether a damages cap on non-economic damages in a medical malpractice action was an affirmative defense that was waived if not asserted in an answer. 333 F.3d 791 (7th Cir. 2003). The burden of

9

proof for an affirmative defense, of course, is on the party asserting it. *Bauer v. J. B. Hunt Transport, Inc.*, 150 F.3d 759, 763 (7th Cir. 1998) ("The defendant, it is true, bears the burden of proof on any affirmative defense that it chooses to assert."). Although the court found it unnecessary to answer the question in *Carter*, it noted that "[a] cap on damages is only a partial defense, but that is true of any defense that is limited to the amount of damages, and in that respect it is no different from comparative negligence, which clearly is an affirmative defense." 333 F.3d at 796. Other circuits have held that limitations on liability constitute affirmative defenses. *See, e.g.*, *Ingraham v. United States*, 808 F.2d 1075, 1078-1079 (1987); *Jakobsen v. Mass. Port Auth.*, 520 F.2d 810, 813 (1975).

It makes sense to hold that a defendant's net worth limitation on liability in an FDCPA action is an affirmative defense on which the defendant has the burden of proof, not only because such a limitation is a matter of avoidance, but also because the defendant is in the best position to present evidence of its own net worth. Absent proof of the defendant debt collector's net worth, the $500,000 cap on class liability applies. It thus follows that Plaintiff was not required to produce evidence of net worth at this stage of the proceedings and instead the burden of proof on this issue belongs to Defendant. Defendant cites its response to Plaintiff's Rule 36 Requests to Admit, in which Defendant denied that its net worth exceeded $100,000 as the only evidence on its net worth. Dkt. No. 17-1 at 5–6. But the denial of an opposing party's Request to Admit is not evidence. A set of Requests To Admit is simply a procedural device for clarifying what is in dispute and what is not; a denial means the party must prove the fact for which an admission was sought. Fed. R. Civ. P. 36(b). Absent proof that Defendant's net worth is such that an award to individual class members of only pennies would result, I conclude based on the evidence and Rule 23 considerations

that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CONCLUSION

Plaintiff has fulfilled the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure. For the foregoing reasons, Plaintiff's motion for class certification (Dkt. No. 15) is **GRANTED**. The Clerk is directed to schedule this matter for further proceedings to address the form of notice to the members of the class.

**SO ORDERED** at Green Bay, Wisconsin this  7th  day of June, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
